ANDOVER NEWTON THEOLOGICAL
SCHOOL, INC., Plaintiff, Appellant,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant,
Appellee.

ANDOVER NEWTON THEOLOGICAL
SCHOOL, INC., Plaintiff, Appellee,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant,
Appellant.

Nos. 89–1945, 89–1946.

United States Court of Appeals,
First Circuit.

Heard March 8, 1991.

Decided April 10, 1991.

Leonard F. Clarkin with whom Harry C. Beach, Wood, Clarkin & Sawyer, P.C., Susan A. Jackson and Haussermann, Davison & Shattuck were on brief, Boston, Mass., for Andover Newton Theological School, Inc.

Patricia A. Gotschalk with whom Timothy C. Russell, S. Elizabeth Doran, Drinker, Biddle & Reath, Washington, D.C., Joan M. Griffin and Casner & Edwards were on brief, Boston, Mass., for Continental Cas. Co.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

In 1987, a jury found that Andover Newton Theological School, Inc. (Andover) both violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and breached an employment contract when it terminated a tenured professor. This court affirmed the jury's verdict in *Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1 (1st Cir.1989). Andover thereafter made a claim on its insurance carrier, Continental Casualty Co. (Continental). When Continental refused to pay the claim, Andover filed suit, alleging breach of insurance contract and unfair and deceptive trade practices. The district court held that Continental was not obligated under the policy to reimburse Andover

for damages arising from the *Linn* case because Massachusetts law precluded an insurance company from insuring a willful violation of the ADEA. *See* Mass.Gen.L. ch. 175, § 47, Sixth (b). The court also held that the policy language unambiguously excluded payments for amounts due under the terms of a contractual obligation. The court held, however, that the policy permitted recovery of costs associated with the defense of the *Linn* case, and awarded $102,748.85 for that loss.

On appeal, Andover challenges both the district court's determination that a willful violation of the ADEA fell within the public policy proscriptions of Mass.Gen.L. ch. 175, § 47, Sixth (b), and the court's interpretation of the policy exclusion for contractual obligations. Continental, in turn, appeals the award of litigation costs.

After hearing oral argument, this court concluded that a critical issue in this case turned on a question of Massachusetts law on which we could find no controlling precedent. We therefore certified a single question to the Massachusetts Supreme Judicial Court in accordance with Mass.S.J.C. Rule 1:03:

> Does a finding of willfulness under the Age Discrimination in Employment Act (ADEA), if based on a finding of "reckless disregard as to whether [defendant's] conduct is prohibited by federal law," constitute "deliberate or intentional ... wrongdoing" such as to preclude indemnification by an insurer under the public policy of Massachusetts as codified at Mass.Gen.L. ch. 175, § 47 Sixth (b)?

*Andover Newton Theological School, Inc. v. Continental Casualty Co.*, 901 F.2d 1, 3 (1st Cir.1990). The SJC answered that it did not. *Andover Newton Theological School, Inc. v. Continental Casualty Co.*, 409 Mass. 350, 566 N.E.2d 1117 (1991). With that answer in hand, we now address the parties' contentions on appeal. Concluding that the district court erred, we reverse and remand the case for further proceedings consistent with this opinion.

## I. *The ADEA Claim*

Andover was insured by Continental for losses arising out of wrongful acts. The scope of the insured loss specifically was limited by policy language stating that:

> such subject of loss shall not include ... matters which shall be deemed uninsurable under the law pursuant to which this policy shall be construed.

In the underlying action, Andover was found by a jury to have violated the ADEA by discharging Dr. Edmund Linn from his tenured faculty position when he was 62 years of age. The jury also found Andover's conduct to have been willful under the ADEA. The jury's finding of willfulness was based on an instruction that "[a] defendant acts willfully if it knows its conduct was prohibited by federal law or if it acts in reckless disregard as to whether its conduct is prohibited by federal law. 'Prohibited' being age discrimination in this case."

The district court granted summary judgment to Continental, holding that the United States Supreme Court had defined "willful" under the ADEA to mean "voluntary," "deliberate" or "intentional" in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). The court then concluded that "willful" conduct was within the meaning of the Massachusetts provision precluding insurance coverage for "deliberate or intentional ... wrongdoing."

■ The district court's reliance on this language from *McLaughlin* was misplaced. First, the controlling definition by the Supreme Court of the word "willful" in the liquidated damages provision of the ADEA, 29 U.S.C. § 626(b), appears in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985), where the Court held that "a violation is 'willful' if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" Second, the language from *McLaughlin* quoted by the district court was preliminary discussion; the *McLaughlin* Court ultimately adopted the *Thurston* standard. Finally, regardless of

the standard enunciated by the Supreme Court, what is significant here is the standard actually applied by the jury in reaching its finding of willfulness—knowing or reckless disregard of whether conduct is proscribed by federal law. And, answering our certified question, the SJC has held that an action taken in reckless disregard of the ADEA is not conduct uninsurable under Massachusetts law. It would seem, therefore, that Continental is obligated under the policy to reimburse Andover for the loss if the jury's finding of willfulness rested on a finding of recklessness.

Continental, however, advances one further reason why Andover's conduct falls within the Massachusetts statute's proscription. It argues that, in an individual disparate treatment case, a finding of liability constitutes a finding of intentional discrimination. *See, e.g., Menzel v. Western Auto Supply Co.,* 848 F.2d 327, 329 (1st Cir.1988) ("finding of pretext is the equivalent of a finding that the employer intentionally discriminated"). Therefore, Continental suggests, once the jury found liability, coverage was illegal under the Massachusetts statute, and the finding of willfulness was unnecessary.

Continental relies for this argument on cases from other circuits adopting a standard of willfulness higher than the *Thurston* standard in actions alleging individual disparate treatment because, in such cases, a finding of liability requires a finding of intentional discrimination, and therefore willfulness will almost always be present.[1] Those courts concluded that a more strin-

gent willfulness standard must be applied in such cases to respond to the *Thurston* Court's understanding that "willfulness" was not intended to be interpreted so as to result in double damages in almost every case. *See Thurston,* 469 U.S. at 128, 105 S.Ct. at 625. But these cases do not state that every finding of liability in an individual disparate treatment case necessarily *requires* a finding of willfulness under the *Thurston* standard.[2] More importantly, these cases do not even come close to suggesting that the standard for liability in individual disparate treatment cases is *higher* than the *Thurston* standard for willfulness—in other words, that a finding of discrimination precludes the employer's conduct from being merely reckless with regard to the Act—as defendant argues here.

In addition, the SJC's opinion expressly rejects the defendant's loose understanding of the word "intentional." As the court says, "[t]he fact that a wrongful act was committed intentionally ... does not alone bar coverage. That bar arises only if an intentionally committed, wrongful act was also done deliberately or intentionally, in the sense that the actor knew that the act was wrongful." *Andover Newton,* 409 Mass. at 352, 566 N.E.2d 1117.[3]

There is no indication in this case that the jury made a determination about Andover's state of mind other than in its conclusion that Andover had acted willfully—a finding that would bar recovery only if the jury based its determination on a conclu-

---

**1.** *See Schrand v. Federal Pacific Elec. Co.,* 851 F.2d 152, 158 (6th Cir.1988); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1549 (10th Cir. 1988); *Dreyer v. Arco Chemical Co.,* 801 F.2d 651, 658 (3d Cir.1986).

**2.** *See also Burlew v. Eaton Corp.,* 869 F.2d 1063, 1069 (7th Cir.1989) (finding of intentional discrimination does not necessarily indicate a "conscious, deliberate state of mind"); *Bethea v. Levi Strauss & Co.,* 827 F.2d 355, 359 (8th Cir. 1987) (applying *Thurston* standard, a finding of intentional discrimination does not require finding of willfulness); *Gilliam v. Armtex, Inc.,* 820 F.2d 1387, 1390 (4th Cir.1987) (admission of awareness of ADEA coupled with finding of violation does not require finding of willfulness). *But cf. Lindsey v. American Cast Iron*

*Pipe Co.,* 810 F.2d 1094, 1099 (11th Cir.1987) (on facts of case, finding of discrimination together with admission of knowledge about ADEA required finding of liquidated damages under *Thurston* standard).

**3.** In other words, Massachusetts law only proscribes coverage of acts committed with the *specific* intent to do something the law forbids. *Cf. Loeb v. Textron, Inc.,* 600 F.2d 1003, 1020 n. 27 (1st Cir.1979) ("'An act is done "willfully" if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.'") (quoting E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 14.06, at 384 (3d ed. 1977)).

sion that Andover knew its actions were wrongful. Instead, the jury was asked to determine whether "age was a motivating factor in [Linn's] discharge in the sense that but for defendant's motive to discriminate against him because of his age he would not have been discharged." And the judge specifically instructed the jury that Andover legally could not consider the availability of a pension to Linn or make assumptions about the productivity of older persons in deciding which faculty member to terminate. The jury could have found that Andover considered these factors—and therefore discriminated—without consciously appreciating the illegality of its act. *See Burlew*, 869 F.2d at 1066 (" '[A]ge discrimination may simply arise from an *unconscious* application of stereotyped notions of ability rather than from a deliberate desire to remove older employees from the workforce....' ") (quoting *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 154–55 (7th Cir.1981), *overruled in part by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988) (emphasis in original)). There is simply nothing inherent in the finding of age discrimination or in the instructions given the jury here that rendered a finding of willfulness superfluous.[4]

■ We therefore conclude that Massachusetts public policy does not bar insurance coverage of an employment action solely because it is found to violate the ADEA in an individual disparate treatment case. Nor, according to the SJC, does a jury's determination that the violation was willful bar coverage, if the jury based that determination on a finding of recklessness. The district court therefore erred in granting summary judgment to Continental on this issue.

## II. *The Contract Claim*

The insurance policy contained a clause excluding coverage for contract claims:

The Insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds, and/or the School District.

.    .    .    .    .

(6) For any amounts due, under the terms of any contractual obligation....

Andover argues that this exclusion is ambiguous. It suggests that the clause does not exclude coverage of damages incurred through discriminatory acts under the ADEA; the policy merely excludes coverage for monies owed on a contract. Thus, despite the fact that the clause would prevent recovery for awards of back pay, front pay and retirement benefits on the breach of contract claim, damages caused by discrimination that consist of back pay, front pay and retirement benefits should be recoverable. The district court, however, held that the term "contractual obligations" was unambiguous and that these damages were not recoverable by the clear meaning of the term.

■ Although clear provisions should not be strained to suggest ambiguity, *see Mutual Fire, Marine and Inland Ins. Co. v. Costa*, 789 F.2d 83, 87 (1st Cir.1986), the wording of an exclusion must be strictly construed, and any ambiguity is to be interpreted in favor of the insured. *See American Home Assur. Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 26 (1st Cir.1986); *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 82, 469 N.E.2d 797, 799 (1984). We cannot conclude that the meaning of the instant exclusion is clear. The provision specifically states that Continental is not liable for a loss in connection with "any *claim* against the Assureds ... [f]or any amounts due, *under the terms* of any contractual obligation." The clause implies that only claims invoking the terms of the contract itself are excluded, not claims awarding damages for losses caused by a

---

4. Indeed, as a factual matter, there is some evidence that the jury reached the willfulness question without finding conscious, intentional discrimination. During deliberations, the jury returned with a question about willfulness:

Your Honor, we would like to see the exact wording of the age discrimination law, in particular the wording of the part that addresses willful or reckless disregard of the law.

More precisely, if it is unintentional, is it willful or reckless or can it be?

discriminatory act in amounts that would have been owed on a separately enforceable employment contract, had the discriminatory act not occurred. While this court has indicated that "in its 'essential nature' an ADEA action is identical to a common law suit for ... breach of contract," *see* *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871–72 (1st Cir.1982), the ADEA itself does not create an overall employment contract. It creates a single legal obligation not to discharge for discriminatory reasons. The *Kolb* decision, on which Continental relies, decided only that, under the ADEA, damages were recoverable strictly for economic losses, not for pain and suffering; it did not intend to redefine "contractual obligation" as used by an insurer in a coverage provision.

■ In this case, the jury separately found that a contract was breached. But no employment contract need have existed for damages to have resulted from a violation of the ADEA. Andover would have been liable under the ADEA for damages caused by its discriminatory acts, including damages for back pay, front pay and retirement benefits, even if Linn were employed at will. Thus, the ADEA damages awarded did not depend on the existence of an underlying contract, but only on the existence of an ongoing employment relationship.

In reaching the opposite conclusion, the district court relied on *National Union Fire Ins., Inc. v. Hospital Affiliates Management Corp.,* 363 N.W.2d 494, 496 (Minn.Ct.App.1985). The court reasoned that the *National Union* case had interpreted the identical policy language and found it to be unambiguous; therefore the clause was unambiguous here. But the *National Union* court was dealing with an action for breach of contract only. That court said merely that the quoted language

was not ambiguous insofar as it clearly precluded indemnification for unliquidated as well as liquidated damages caused by the breach. The court expressed no opinion on the existence of ambiguity in the factual situation presented here. To the contrary, the *National Union* court's analysis supports our own reasoning. It stated that unliquidated damages for lost profits and loss of goodwill were excluded because they were "element[s] of contract damages, meaning that *liability for payment arises by virtue of the contractual obligation.*" *Id.* at 496 (emphasis our own). In this case, the liability for payment of ADEA damages did not "arise[ ] by virtue of the contractual obligation." It arose by virtue of a violation of federal law in an employment relationship that caused economic losses.

We conclude, therefore, that the meaning of the clause is ambiguous and construe the provision favorably to Andover. While Continental could have insured against recovery for wages in a discrimination action, it did not explicitly do so. If the discharge of Linn was taken in reckless disregard of federal law, Andover is entitled to reimbursement for damages caused by the violation of that law.

■ Having reached this conclusion, we note Continental's own uncertainty about the meaning of the provision, as expressed in its Corporate Claim Policy Manual.[5] There, the company advised claims examiners:

Also, be conscious of the type of damages that could be assessed. Note exclusion IV(b)(6) in the liberalization endorsement. Specific awards for breach of contract are not covered; e.g., salary due for wrongful termination. However, if the award for salary is not as back pay, but rather *damages* that consist of back pay, there *may* be coverage.

---

5. We are aware that where language is clear and unambiguous, extrinsic evidence is inadmissible to prove the parties' intent. *See, e.g., Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12, 17 (1st Cir.1982). Here, however, we already have concluded that the language is unclear. *See Keating v. Stadium Management Corp.,* 24 Mass.App.Ct. 246, 249–50, 508 N.E.2d

121, 123 (1987) (may use extrinsic evidence to elucidate but not contradict the written terms). Moreover, we do not use this information to show what Continental actually intended the clause to mean, but rather to indicate that Continental itself saw the clause to be potentially ambiguous.

(Emphasis in original.) If Continental, itself the drafter of the clause, was not sure whether the exclusion applied to damages consisting of back pay, we are even more certain that the clause cannot be treated as unambiguous. In these circumstances, an award of damages on the discrimination claim that includes amounts representing back and front pay and retirement benefits is recoverable.

### III. *Defense Litigation Costs*

Continental argues that the district court erred in determining that it was liable under the policy to reimburse Andover for defense costs incurred in the *Linn* action. Continental asserted below that coverage for defense costs is limited to those situations in which there is underlying policy coverage for the act. The district court determined that, notwithstanding the fact that liability coverage was unavailable for willful discrimination under the ADEA, the policy failed to exclude coverage for defense costs associated with those claims. We agree.

The Continental policy covers losses the assured becomes legally obligated to pay, and "loss" is defined as:

> any amount which the Assureds are legally obligated to pay ... for a claim or claims made against the Assureds for a Wrongful Act and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation and defense of legal actions, (excluding from such costs of investigation and defense, salaries of officers or employees of the School District or any other governmental body) claims or proceedings and appeals therefrom, ... provided always, however, such subject of loss shall not include ... matters which shall be deemed uninsurable under the law pursuant to which this policy shall be construed.

Continental does not deny that discriminatory acts are "wrongful acts" within the meaning of the policy. Coverage for wrongful acts, however, is limited by a specific exclusion of those "subjects of loss" deemed uninsurable under Massachusetts law. The exclusion of defense costs therefore is dependent on whether Massachusetts would consider such costs uninsurable.

As we have discussed, Massachusetts law precludes an insurance company from insuring "any person against legal liability for causing injury, other than bodily injury, by his deliberate or intentional crime or wrongdoing." Mass.Gen.L. ch. 175, § 47, Sixth (b). As we read this language, while public policy proscribes insuring against *legal liability* for intentional wrongdoing, the language of the public policy prohibition expresses no intent with respect to insurance coverage for the costs of defending against such liability. Although an argument can be made that a public policy is to some extent subverted by insurance against defense costs, the basic fact is that this is not insurance against liability. Continental points to no authority for extending the public policy bar to these claims. Where the SJC has declined to interpret the scope of the public policy provision expansively, *see Andover Newton*, 409 Mass. 350, 566 N.E.2d 1117, we also are loath to do so.

As we have noted, exclusions must state clearly what items are to be excluded, *see American Home Assur.*, 786 F.2d at 26. Continental, while it could have done so, made no attempt to exclude defense costs associated with uninsurable claims. The policy therefore allows such coverage. *See Starkville Mun. Separate School Dist. v. Continental Casualty Co.*, 772 F.2d 168, 170 (5th Cir.1985) ("While punitive damages themselves may be uninsurable for reasons of public policy, that same public policy does not apply to costs and attorney's fees incurred in a defense against a plea for punitive damages.... If CNA intended to exclude these other costs from the policy's coverage, it needed to do so more explicitly....").[6]

---

**6.** Continental attempts to distinguish *Starkville* because the defense of the punitive damages claim in that case ultimately was successful, unlike in this case. But the *Starkville* court, while noting that this factor was an additional

Continental, however, relies on an unpublished district court case, *Continental Casualty Co. v. McAllen Indep. School Dist.*, No. B–86–007 (S.D.Tex. May 19, 1987), holding that with a reimbursement policy such as the one in this case, the reimbursement coverage obligation is limited to losses incurred with respect to "covered claims." But even were this decision of precedential value here, *see* Loc.R.App.P. 36.2 (citation to unpublished decisions limited to related cases), the case is inapposite. *McAllen* decided that the underlying acts did not fall within the scope of covered acts under the policy. It is therefore reasonable for reimbursement for defense costs to extend only as far as coverage for the acts. In this case, as we have observed, there is no dispute that the policy covers "wrongful acts" of the type that occurred here. It is only the scope of the *exclusion* that is at issue, and the exclusion language is narrow.

We therefore conclude that Continental is liable for defense costs incurred in the *Linn* action, regardless of whether the termination ultimately is found to have been taken in knowing violation of federal law. Continental does not dispute that defense costs associated with the contract action are recoverable if the ADEA defense costs are covered. Andover therefore is entitled to reimbursement for its defense costs associated with all claims.

As Continental asserts, however, it appears that the district court awarded attorney's fees without receiving any evidence about the actual costs of defending the *Linn* action. The court awarded defense costs in the amount of attorney's fees recovered by Linn in the underlying action, apparently concluding that if the amount was the reasonable value of attorney's fees for Linn, it is the reasonable amount spent by the school in the action. This analysis is not adequate. On remand, the district court should receive proof of the amounts actually expended by Andover and establish the amount of Continental's obligation accordingly.

reason supporting coverage, did not rest its

*Reversed in part, affirmed in part, and remanded for further action in accordance with this opinion. Costs to appellant.*

analysis on the distinction.