August 21, 1995
 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 95-1168

 DONALD HOGAN,

 Plaintiff, Appellee,

 v.

 BANGOR AND AROOSTOOK RAILROAD COMPANY,

 Defendant, Appellant.

 

No. 95-1169

 DONALD HOGAN,

 Plaintiff, Appellant,

 v.

 BANGOR AND AROOSTOOK RAILROAD COMPANY,

 Defendant, Appellee.

 

 ERRATA SHEET

The opinion of this court issued on August 18, 1995 is amended as
follows:

On the cover sheet, substitute "On Appeals" for "On Appeal".

On the cover sheet, substitute "for Bangor and Aroostook Railroad
Company" for "for appellant".

On the cover sheet, substitute "for Donald Hogan" for "for
appellee".

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 95-1168

 DONALD HOGAN,

 Plaintiff, Appellee,

 v.

 BANGOR AND AROOSTOOK RAILROAD COMPANY,

 Defendant, Appellant.

 

No. 95-1169

 DONALD HOGAN,

 Plaintiff, Appellant,

 v.

 BANGOR AND AROOSTOOK RAILROAD COMPANY,

 Defendant, Appellee.

 

 ON APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF MAINE

 [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] 

 

 Before

 Selya, Cyr, and Lynch, Circuit Judges. 

 

James E. Howard, with whom M. Katherine Willard and Phoebe S. 
Gallagher were on brief, for appellant.  
William J. Kelleher for appellee. 

 
 August 18, 1995
 

 LYNCH, Circuit Judge. An employer's refusal to let LYNCH, Circuit Judge. 

an employee return to work out of a difference of medical

views as to whether the employee was fit gave rise to this

discrimination action brought under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and the 

Maine Human Rights Act ("MHRA"), Me. Rev. Stat. Ann. tit. 5,

 4561 et seq. (West 1989). A jury verdict in favor of the 

plaintiff Donald Hogan of $400,000, reduced by the district

court to $200,000, gives rise to a case of first impression

in this Circuit on the meaning of the cap on ADA damages

imposed by 42 U.S.C. 1981a(b)(3). Because the language of

the statute is clear, the reduction of the jury award of

damages to $200,000 is affirmed. The challenges of the

defendant Bangor and Aroostook Railroad ("BAR") to the

sufficiency of the evidence to support the $200,000 award and

to the additional back pay award of $70,684.29 are rejected,

as is Hogan's challenge to the denial of his motion for

prejudgment interest.

 Hogan, a trackman for BAR since 1970, suffered a

collapsed lung while at work in February 1992. After surgery

to remove a lobe of his lung, Hogan was told on May 20, 1992

by Dr. Cabot that he was fit to return to work. Dr. Sagall,

BAR's Chief Medical Officer and a family practitioner,

examined Hogan and, based on what he professed to be abnormal

pulmonary function tests, concluded Hogan was not able to

return to his physically demanding job. Dr. Sagall believed

that Hogan suffered from bullous disease and emphysema, and

that this increased Hogan's risk of lung collapse.

 Despite mounting medical evidence to the contrary,

Dr. Sagall clung to his belief for more than two and a half

years. Hogan's physician, Dr. Cabot, based on later

examination again repeated that Hogan was fit. Dr. Sagall,

feeling Dr. Cabot did not understand how strenuous Hogan's

job was, again told Hogan he could not return to work. Dr.

Sagall, however, failed to discuss Hogan with Dr. Cabot,

failed to ascertain if Dr. Cabot did misunderstand the nature

of the job, and failed to have x-rays done which would have

revealed whether Hogan in fact suffered from emphysema and

bullous disease. Indeed, Dr. Sagall did not request x-rays

until January 1993, after Hogan had brought suit, when

directed to do so by the Railway Retirement Board. In

addition, CAT-scan results available to Dr. Sagall in March

1992 would have disclosed, if reviewed, that Hogan did not

suffer from emphysema.

 By January 1993 BAR had been given an opinion from

an acknowledged pulmonary specialist, Dr. Oldenburg, that

Hogan could return to work. This opinion fared no better in

swaying BAR than did Dr. Cabot's opinion. Dr. Sagall again

felt no need to contact Dr. Oldenburg and discuss Hogan.

 -3- 3

 In October 1993, BAR requested that Hogan undergo a

Functional Capacity Test prepared specifically for him.

There was no guarantee that if Hogan passed the test he would

be allowed to return to work. Hogan refused to take the

test. 

 In November 1994, after trial had started and after

examinations by both Dr. Oldenburg and Dr. Sagall, BAR

reinstated Hogan to his job as trackman.

 In the period that Hogan was kept out of work

despite his doctors' opinions that he was fit, Hogan and his

family were forced to live on a fraction of his former income

as family breadwinner. Dr. Sagall's repeated statements to

him that he was disabled and the disability was probably

permanent exacerbated Hogan's depressed state.

 The jury found in Hogan's favor under the ADA and

awarded him $200,000 each in punitive and in compensatory

damages. The district court then reduced Hogan's award to

$200,000 ($100,000 compensatory and $100,000 punitive)

pursuant to the statutory cap imposed by 42 U.S.C. 

1981a(b)(3). In addition, Hogan was awarded $70,684.29 in

back pay. As an alternative recovery under the MHRA, the

district court awarded Hogan the same back pay award of

$70,684.29 plus $5,000 in civil penal damages. 

 Hoping to retain the $400,000 award, Hogan argues,

based solely on an improbable reading of the statute, that 42

 -4- 4

U.S.C. 1981a(b)(3) imposes a cap of $200,000 on each type 

of damage award, and not on the sum of the two. The language 

of 42 U.S.C. 1981a(b)(3) provides:

 The sum of the amount of compensatory damages
 awarded under this section for future pecuniary
 losses, emotional pain, suffering, inconvenience,
 mental anguish, loss of enjoyment of life, and
 other nonpecuniary losses, and the amount of
 punitive damages awarded under this section, shall
 not exceed . . . $200,000.

 The district court correctly read the provision as

"[t]he sum of the amount of compensatory damages . . . and

the amount of punitive damages . . . shall not exceed . . .

$200,000." The only other court to have considered the issue

thus far has reached the same conclusion. See U.S. Equal 

Employment Opportunity Commission v. AIC Security 

Investigations, Ltd., 823 F. Supp. 571, 576 (N.D. Ill. 1993), 

rev'd in part on other grounds, 55 F.3d 1276 (7th Cir. 1995). 

 The statute is clear on its face that the sum of

compensatory damages (including its various components) and

punitive damages shall not exceed $200,000. "The task of

statutory interpretation begins with the language of the

statute, and statutory language must be accorded its ordinary

meaning." Gately v. Commonwealth of Massachusetts, 2 F.3d 

1221, 1228 (1st Cir. 1993), cert. denied, 114 S. Ct. 1832 

(1994). "[W]hen a statute speaks with clarity to an issue

judicial inquiry into the statute's meaning, in all but the

 -5- 5

most extraordinary circumstance, is finished." Estate of 

Cowart v. Nicklos Drilling Co., 112 S. Ct. 2589, 2594 (1992). 

 The reduction of the jury award from $200,000 to

$100,000 on each type of damage award was done by the

district court simply to accommodate the cap. The original

jury award of $200,000 for compensatory damages alone would

also satisfy the cap. Exercising our authority under 28

U.S.C. 2106, see United States v. Garafano, No. 95-1127, 

slip op. at 8 (1st Cir. Aug. 7, 1995), we reinstate the

jury's award of $200,000 in compensatory damages, for which

there is sufficient evidence as described below, and vacate

the district court's award of $100,000 in punitive damages,

thus obviating the need to reach the question of punitive

damages. 

 BAR argues that the jury's award of compensatory

damages was excessive and should be reduced.1 An award of

compensatory damages is excessive if it exceeds a rational

appraisal of the damages actually incurred. See Linn v. 

Andover Newton Theological School, Inc., 874 F.2d 1, 6 (1st 

Cir. 1989). "Generousness of a jury's award does not alone

justify an appellate court in setting it aside." Id. 

  

1. BAR argues that the reduced jury award of $100,000 in
compensatory damages was excessive. Since we have reinstated
the full jury award of $200,000 on compensatory damages, we
treat BAR's arguments on the $100,000 of compensatory damages
as applying to the full amount.

 -6- 6

(quoting Kolb v. Goldring, Inc., 694 F.2d 869, 871 (1st Cir. 

1982)). 

 BAR argues Hogan did not prove emotional distress

sufficient to warrant the damages award. The jury, however,

awarded compensatory damages not only for emotional distress,

but also for inconvenience, mental anguish, and loss of

enjoyment of life. Until his reinstatement in October 1994,

Hogan was repeatedly and incorrectly kept from a job he had

held for twenty-two years. During the almost two and a half

years he was kept out of work, Hogan, who was married and had

two young children, saw his annual income of $28,000 and

benefits plummet to $13,000 with no benefits. His wife, who

had previously cared for their children, went to work in a

shoe factory in order for the family to have medical

insurance. As the district court noted, they were in "a

difficult financial situation." The company doctor had told

Hogan he was "disabled" and that it was highly unlikely he

would ever be able to return to physical labor, the job he

had had most of his adult life. Hogan, very upset as a

result, became depressed, withdrawn, and gave up his usual

activities. His pulmonary specialist described him as "quite

depressed." The evidence was adequate to support the award.

See Bolden v. Southeastern Pennsylvania Transportation 

Authority, 21 F.3d 29, 33 (3d Cir. 1994). 

 -7- 7

 BAR also argues that Hogan's refusal to take a

Functional Capacity Evaluation Test ("FCE") specially

designed for him, in September 1993, constituted a failure to

mitigate back pay damages, and that the district court erred

in not so ruling. An employee's rejection of an employer's

unconditional job offer does end the accrual of the

employer's potential back pay liability, absent special

circumstances. Ford Motor Co. v. Equal Employment 

Opportunity Commission, 458 U.S. 219, 241 (1982); Morris v. 

American National Can Corporation, 952 F.2d 200, 202 (8th 

Cir. 1991). If Hogan had taken and passed the FCE, he still

had to proceed to further tests and if he cleared those he

was required to obtain a clearance from Dr. Sagall. BAR's

argument fails because it was by no means clear that Hogan

was to be reinstated to his job upon completion of the FCE.

BAR did not meet its burden of showing it made an

unconditional job offer, much less its burden of showing that

the district court (which believed BAR's suggestion that

Hogan undertake the testing regime was a litigation tactic,

and untimely to boot) erred. In the absence of a concrete

offer of reinstatement, the period of back pay accrual does

not end.

 Hogan finally argues that the district court abused

its discretion in not awarding him prejudgment interest on

his back pay award under federal law. Whether prejudgment

 -8- 8

interest is needed to make a plaintiff whole is within the

discretion of the district court. See Conway v. Electro 

Switch Corp., 825 F.2d 593, 602 (1st Cir. 1987). The 

district court did not abuse its discretion in not awarding

Hogan prejudgment interest here where the award of damages is

almost three times the size of the back pay award.

 We do not reach Hogan's claim of prejudgment

interest under the MHRA because Hogan admits he failed to

seek such interest from the district court, and he may not do

so initially on appeal. See, e.g., CMM Cable Rep., Inc. v. 

Ocean Coast Properties. Inc., 48 F.3d 618, 622 (1st Cir. 

1995) ("A party who neglects to ask the trial court for

relief that it might reasonably have thought would be

available is not entitled to importune the court of appeals

to grant that relief.").

 We vacate the district court's award of $100,000 in

punitive damages, reinstate the jury's award of $200,000 in

compensatory damages, and affirm the judgment on all other

issues. 

 No costs to either party.

 -9- 9