**Marta RUIZ a/k/a Marta Ruiz Romero, Plaintiff, Appellee,**

**v.**

**Generoso GONZALEZ CARABALLO, etc., et al., Defendants, Appellants.**

**No. 90–1468.**

United States Court of Appeals, First Circuit.

Heard March 6, 1991.

Decided April 2, 1991.

**32**

See also 681 F.Supp. 123.

Vanessa Ramirez, Asst. Sol. Gen., with whom Jorge E. Perez–Diaz, Sol. Gen., was on brief for defendants, appellants.

Eric M. Quetglas Jordan, with whom Jose F. Quetglas Alvarez and Jose F. Quetglas Jordan, were on brief for plaintiff, appellee.

Before BREYER, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

In this case, there was evidence that plaintiff-appellee Marta Ruiz Romero (Ruiz), a thirty-six year old female in her thirty-seventh week of pregnancy, was beaten by Generoso Gonzalez Caraballo (Gonzalez), a police officer, on a public street in San Juan. Gonzalez's fellow officer, Samuel Fontanez Berberena (Fontanez), stood by and, when requested, handcuffed the plaintiff. Ruiz was then thrown face down onto the floor of a nearby police cruiser and transported to the stationhouse by her attackers. She was hit several more times while in transit.

When Ruiz arrived at the station, she was slapped again and locked up. After far too long, she was removed from her cell and taken to the emergency room. Several hours later, Juan Comas Valle (Comas), a police sergeant, handcuffed Ruiz and took her from the municipal hospital to the Criminal Investigation Center. She was kept there for over seven hours. A total of twelve misdemeanor complaints were filed against Ruiz by Sergeants Comas and Merced Diaz (Merced), charging her with breach of the peace, aggression, resisting arrest, deadly threat, malicious destruction of property, and the like. The plaintiff was eventually exonerated on all counts.

Ruiz sued Gonzalez, Fontanez, Comas, Merced, and Lt. Alfredo Cortes Rivera (Cortes), who was in command at the precinct on the night in question.[1] The primary thrust of her action was under 42

1. She also sued the then superintendent of police, alleging inadequate training and supervision. At trial, the superintendent's motion for directed verdict was granted. The plaintiff has not appealed from this ruling, so we treat the case as if only the five lower-ranking officers were named as defendants.

U.S.C. § 1983. The case was tried to a jury over a seven day span. At trial's end, the judge asked the jury to enter its findings on a special verdict form (SVF). Neither side objected. The jury returned verdicts totalling $1,000,000. We summarize the contents of the completed SVF insofar as relevant to this appeal.

\* \* \* \* \* \*

3. We, the Jury, unanimously find by a preponderance of the evidence that ... defendants [Gonzalez and Fontanez] did ... use excessive force during the arrest of plaintiff.... [and] award plaintiff the sum of $150,000 in compensation for the use of excessive force during her arrest.

4. We, the Jury, unanimously find by a preponderance of the evidence that [all five] defendants did initiate a prosecution against plaintiff, either maliciously or for an illegitimate purpose.... [and] award plaintiff the sum of $100,000 for this malicious or illegitimate prosecution.

5. We, the Jury, unanimously find by a preponderance of the evidence that [all five] defendants did continue the incarceration of plaintiff after it was apparent that there was no probable cause for her detention.... [and] award plaintiff the sum of $50,000 for her continued detention.

6. We, the Jury, unanimously find by a preponderance of the evidence that the defendant Generoso Gonzalez Caraballo did ... use excessive force against the plaintiff during her detention.... [and] award the plaintiff the sum of $75,000 as compensation for the use of excessive force during her detention.

7. We, the Jury, unanimously find by a preponderance of the evidence that the plaintiff will ... continue to suffer damages as a result of the acts and omissions of the [defendant Gonzalez].... [and] award plaintiff the sum of $400,000 to compensate her continuing damages.

8. We, the Jury, unanimously find by a preponderance of the evidence that the following defendants [Fontanez, Comas, Merced, and Cortes] did ... proximately cause a deprivation of the plaintiff's civil right to liberty by failing to intervene when fellow officers deprived the plaintiff of her civil right to liberty.... [and] award the plaintiff the sum of $100,000 as compensation.

9. We, the Jury, unanimously find by a preponderance of the evidence that [all five] defendants did ... conspire to deprive the plaintiff of her civil rights.... [and] award the plaintiff the sum of $100,000 as compensation.

10. We, the Jury, unanimously find by a preponderance of the evidence that the plaintiff.... is entitled to recover punitive damages from the [defendant Gonzalez] in the [sum of] ... $25,000.

\* \* \* \* \* \*

A number of post-trial motions were filed. The district judge upheld the verdict on liability. He determined, however, that certain damage awards were duplicative and/or excessive. Consequently, he authored a careful, precise rescript explaining his thought processes and ordered a remittitur aggregating $600,000. For perspective's sake, we think it helpful to divide the remittitur order into three constituent parts. (1) The judge refused to disturb either the $150,000 award against Gonzalez and Fontanez for the use of excessive force during Ruiz's arrest (SVF No. 3) or the $25,000 punitive damage award against Gonzalez (SVF No. 10). (2) The judge reduced three of the awards substantially, cutting the $400,000 award for future damages (SVF No. 7) to $200,000, the $100,000 award for malicious prosecution (SVF No. 4) to $10,000, and the $75,000 award for excessive force during Ruiz's detention (SVF No. 6) to $15,000.[2] (3) The judge obliterated the awards numbered 5, 8, and 9 on the SVF.

In due course, the plaintiff signified her willingness to accept the reduced recovery. Gonzalez and Fontanez now appeal.

We need not dwell on how the case arose, inasmuch as the appellants no longer contest liability. In this appeal, they as-

---

**2.** The malicious prosecution award, originally and as pared, ran against all five defendants.

The other two awards included under this rubric ran only against Gonzalez.

sign error only in respect to two aspects of damages,[3] contending that both the jury award of $150,000 on the "excessive force during arrest" claim and the judge's (post-remittitur) figure of $200,000 for future damages are grossly excessive. In our estimation, neither point has merit.

We have patiently reviewed the record and believe, as did the court below, that the evidence fully supports a $150,000 compensatory damage award for the unnecessary force employed by appellants at the time of plaintiff's arrest. The beating was brutal. In consequence of it, the plaintiff developed what her psychiatrist diagnosed as a post-traumatic stress disorder. The jury obviously believed that Ruiz's claimed suffering and emotional distress were real, prolonged, and caused by the constables' acts. Given the testimony of plaintiff and the witnesses she produced, the jury was entitled to draw those conclusions. *See, e.g., Betancourt v. J.C. Penney Co.*, 554 F.2d 1206, 1207 (1st Cir.1977) (in considering appropriateness of verdict, court of appeals must view the evidence "in the light most favorable to [the prevailing party]").

To be sure, it is surpassingly difficult on the basis of an algid appellate record to quantify money damages for intangible losses. Yet that difficulty must be resolved in favor of the factfinders. After all, "[t]ranslating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken." *Wagenmann v. Adams*, 829 F.2d 196, 215 (1st Cir.1987). For exactly that reason, "[w]e rarely will override the jury's judgment on the appropriate amount of damages to be awarded." *Brown v. Freedman Baking Co.*, 810 F.2d 6, 11 (1st Cir.1987). This case is by no

means the exception that proves the rule. Because we cannot say that the compensatory damage award "is 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand,'" *Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 80–81 (1st Cir.1984) (quoting *Grunenthal v. Long Island R.R. Co.*, 393 U.S. 156, 159 & n. 4, 89 S.Ct. 331, 333 & n. 4, 21 L.Ed.2d 309 (1968)), the verdict must endure. We cannot, and will not, without substantial cause, overrule a trial judge's considered refusal to tamper with the damages assessed by a jury. *See Wagenmann*, 829 F.2d at 215–16; *McDonald v. Federal Laboratories, Inc.*, 724 F.2d 243, 246 (1st Cir.1984); *LaForest v. Autoridad de Las Fuentes Fluviales de Puerto Rico*, 536 F.2d 443, 447 (1st Cir.1976).

In connection with the award of future damages the appellants face a double obstacle. The jury thought the claim was worth $400,000. At appellants' urging, the district court reviewed the award and reduced it by half. It is settled law in this circuit that:

> Once a verdict has been trimmed and reshaped at the hands of the trial judge, an assault on the remaining amount calls upon [the court of appeals] not merely to grade the essay, but to grade the teacher's grading of the essay. The resultant constraints are not inconsiderable. We agree with the Fifth Circuit that "[w]here the trial court already has invoked its discretion in granting a remittitur, [the] scope of review is even narrower than usual." *Stapleton v. Kawasaki Heavy Industries, Ltd.*, 608 F.2d 571, 574 n. 7 (5th Cir.1979). *Accord Princemont Construction Corp. v. Smith*, 433 F.2d 1217, 1221 n. 25 (D.C. Cir.1970) (per curiam).

---

**3.** To be sure, the appellants take the opportunity in the preliminary sections of their brief to cast aspersions about other matters. *See, e.g.,* Appellants' Brief at 6 (complaining that the SVF was "misleading"); *id.* at 8–11 (suggesting that the plaintiff did not timely assent to the remittitur). But appellants neither mentioned these matters in their statement of issues on appeal nor made any effort in the argument section of their brief

to develop any reasoned argumentation anent them. Hence, all such points were waived. *See Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734 (1st Cir.1990) ("issues adverted to on appeal in a perfunctory manner ... are deemed to have been abandoned"); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) (same), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

*Wagenmann,* 829 F.2d at 215. The appellants "must show, therefore, that the reduced sums remain so exorbitant, so disturbing to our collective conscience, as to entitle them to new trials." *Id.* In this instance, the appellants have not come close to scaling this two-tiered barrier.

We need not wax longiloquent. We have found evidence in the record that Ruiz's life expectancy at the time of trial was well over forty years; that her post-traumatic stress syndrome would likely require extensive future medical treatment at appreciable cost; that she had a permanent partial disability which could, in the opinion of at least one expert witness, account for lost earnings of as much as $84,000 over time; and that her suffering and emotional distress would last indefinitely. No more was required. We have made no secret of our view that, in setting damages, a jury is ordinarily "free to run the whole gamut of euphonious notes—to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between—so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand." *Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988).

To be sure, the appellants assail the plausibility and/or veracity of much of the testimony upon which the "future damages" award rests—and their animadversions are not without some modest weight. But those contentions, when made to us on appeal, are misdirected. The jury found the same protests to be lacking in convictive force; and the trial judge, who, like the jurors, saw and heard the witnesses, credited the bulk of the disputed evidence. Mindful, as we must be, "that the extent of a damage award for noneconomic injuries attributable to the abridgement of one's constitutional rights is a matter committed largely to the discretion of the trial court," *Wagenmann,* 829 F.2d at 216, there is no principled basis upon which we may mas-

sage again the already once-reduced award of future damages.

 We need go no further. The damages that appellants will have to pay, while substantial, do not exceed the outermost total which, by a process of rational appraisal, could fairly be said to flow from the evidence adduced at trial. Put another way, the aggregate amount of damages which plaintiff stands to recover falls comfortably "within the universe of possible awards that are supported by the evidence...." *Clark v. Taylor,* 710 F.2d 4, 14 (1st Cir.1983). While perhaps overgenerous initially, the gross verdict, after its reduction at the practiced hand of an experienced trial judge, "fails to shock—or even to tweak—our collective conscience." *Segal,* 746 F.2d at 81.

*Affirmed. Double costs to be taxed against appellants, see Fed.R.App.P. 38.*[4]

---

**4.** The plaintiff, having prevailed on appeal, is also entitled to attorneys' fees on appeal. *See* 42 U.S.C. § 1988. She may file her application for an award of fees in the district court at any time within thirty days after our mandate issues.